FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### Eastern Division

00 JAN 11 PM 1: 48

U.S. DISTRICT COURT
N.D. OF ALABAMA

PATRICIA L. BRYAN, ALABAMA )
PROBATION AND PAROLE OFFICER )
and FRED THOMPSON, JR., DISTRICT )
ATTORNEY OF CLAY COUNTY, )
)
       Defendants - Appellants, )
)
v. ) CV-99-P-1828-E
)
JEFFERY AND JANET RAINWATER, )
)
       Plaintiffs - Appellees. )

ENTERED
JAN 11 2000

---

## ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### Eastern Division

---

### Opinion

Before the Court is an Appeal taken by Appellants[1], who seek review of orders by the United States Bankruptcy Court granting a writ of habeas corpus and injunctive relief on behalf of Appellees[2]. For the reasons expressed below, these decisions of the Bankruptcy Court are due to be vacated.

### I. Facts:

In 1998, Janet Rainwater was indicted and pled guilty to stealing over $21,000.00 from her employer, Dr. Colleen Meeks of the Clay County Animal Hospital. Because Mrs. Rainwater had a

---

[1] The Appellants in this action are Patricia Bryan, the Alabama Probation and Parol Officer supervising Janet Rainwater's probation, and Fred Thompson, Jr., District Attorney of Clay County, Alabama. Bryan and Thompson are the only two remaining named defendants from the adversary proceeding which gave rise to this appeal. For purposes of this opinion, they will generally be referred to as "the State" because the State of Alabama was to be the recipient of the restitution payments which lie at the heart of this action.

[2] The Appellees in this action are the debtors from the Chapter 13 petition from which this case began: Jeffery and Janet Rainwater. The Rainwaters were also the plaintiffs in the adversary proceeding which gave rise to this appeal. Because her actions are more pertinent to the issues raised in this appeal, this opinion generally refers to "Mrs. Rainwater" as a representative of both Appellees.



prior felony conviction, Judge Rochester of the 40th Judicial Circuit of Alabama sentenced her to a term of ten years under Ala. Code § 13A-5-9, which requires habitual offenders convicted of a Class B felony to be punished for a Class A felony. Subsequently, Judge Rochester ordered Mrs. Rainwater to serve a sentence of probation and restitution in lieu of incarceration. Under the terms of the probation, she was ordered to pay restitution, court costs, and victim compensation in the amount of $21,416.64. The restitution order set a monthly payment of $425.00, to begin on June 15, 1998.

On August 27, 1998, after Mrs. Rainwater failed to make any monthly payments, Patricia Bryan, the Alabama Probation and Parol Officer supervising her probation, informed the sentencing court that Mrs. Rainwater had failed to comply with the court's order. The court directed Ms. Bryan to prepare delinquency reports and place Mrs. Rainwater on the court docket. On September 1, 1998, Mrs. Rainwater was given notice to appear in the sentencing court regarding her failure to pay the restitution as ordered. On September 18, 1998, Mrs. Rainwater filed a Chapter 13 petition for bankruptcy and scheduled the restitution as an unsecured non-priority claim. Under the proposed plan, such claims were anticipated to receive no distribution over the life of the plan.

On September 25, 1998, Ms. Bryan filed the aforementioned delinquency report with the sentencing court, recommending revocation of probation. On the same day, she received notice of the Chapter 13 proceeding by telephone.[3] Prior to the revocation hearing, the District Attorney's office also received notice that Mrs. Rainwater had filed for protection under the Bankruptcy Code. Without seeking authorization and relief from the automatic stay, the State of Alabama proceeded with a probation revocation hearing on October 29, 1998. At the hearing, the parties stipulated that Mrs. Rainwater failed to make any payment toward restitution. At the conclusion of the hearing, Judge Rochester found that Mrs. Rainwater had violated her probation and imposed her original sentence of ten years in the state penitentiary.

Subsequent to the denial by Judge Rochester of a Motion for Reconsideration heard on November 24, 1998, Mrs. Rainwater filed the adversary proceeding which is the subject of this appeal. She filed a complaint and application with the United States Bankruptcy Court, Northern District of Alabama, Eastern Division, for injunctive relief pursuant to Fed. R. Bankr. P. 7065 and a writ of habeas corpus pursuant to 11 U.S.C. §§ 105(a) and 106(a). Mrs Rainwater sought compensatory, punitive, and injunctive relief on the grounds that the State's actions, which culminated in the revocation of her probation for failure to pay restitution, violated the automatic stay of 11 U.S.C. § 362, making the state criminal judgment revoking her probation a legal nullity and void ab initio. The Bankruptcy Court heard expedited hearings on the application for a writ of habeas corpus and injunctive relief on February 18, 1999 and March 9, 1999. Subsequent to these hearings, the Court entered an oral ruling dismissing Judge Rochester, issuing a writ of habeas corpus, and returning Mrs. Rainwater to the status she held as of October 28, 1999. These orders were later reduced to writing. Furthermore, the Bankruptcy Court also denied motions to dismiss filed by the

---

[3] Ms. Bryan argues in her brief to this Court that the Bankruptcy Court erred in its finding that she knew of the bankruptcy proceedings prior to filing the delinquency report. This Court does not find the Bankruptcy Court's factual findings in this regard to be clearly erroneous. *See In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999)(stating that the "clearly erroneous" standard of review to bankruptcy court's findings of fact is appropriate for bankruptcy court orders regarding core matters).

State.

A trial was held by the Bankruptcy Court on March 30, 1999 to determine whether the actions of the State violated the automatic stay. The decision of the Bankruptcy Court was entered on April 16, 1999, sustaining the granting of the writ of habeas corpus and sustaining the injunctive relief. The Court concluded that the State had violated the automatic stay by impermissibly attempting to collect the restitution at issue without first obtaining leave from the Bankruptcy Court. The Court further determined that Mrs. Rainwater was not entitled to recover actual compensatory or punitive damages. On August 4, 1999, the State filed this appeal.

## II. Authority of the Bankruptcy Court to Issue Writ of Habeas Corpus

In the final order and memorandum opinion of the adversary proceeding filed by Rainwater, the Bankruptcy Court held that it had the authority to issue a writ of habeas corpus in the case pursuant to 11 U.S.C. § 105(a), which provides that "[t]he court may issue any order, process, or judgment necessary or appropriate to carry out the provisions of this title." Nevertheless, 28 U.S.C. § 2241 makes it clear that only the "Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions" have the authority to grant writs of habeas corpus. Furthermore, while Congress granted authority to bankruptcy courts to issue writs of habeas corpus in 28 U.S.C. § 2256, the statute was repealed before it ever became effective. *See In re Cornelious*, 214 B.R. 588 (Bankr. E.D. Ark. 1997); *In re Williams*, 196 B.R. 120 (Bankr. E.D. Ark. 1996). Even the one case which the Bankruptcy Court has cited in support of its authority to issue writs of habeas corpus was one where the bankruptcy judge forwarded an opinion to the United States District Court for an order for a prisoner's release. Accordingly, the Bankruptcy Court exceeded its authority when it granted the writ of habeas corpus on behalf of Mrs. Rainwater. The proper federal process for effectuating the release of Mrs. Rainwater was through an action in the United States District Court.[4] As such, the State is entitled to take actions which it deems necessary to enforce any prior orders of the Clay County Circuit Court.

## III. The Automatic Stay of 11 U.S.C. § 362

After the Bankruptcy Court determined that it had jurisdiction[5] to hear this action, it found that the Defendants violated 11 U.S.C. § 362 through their prosecution of Mrs Rainwater's delinquency and subsequent revocation of her probation. 11 U.S.C. § 362(a)(6) provides that the filing of a petition for bankruptcy under section 301, 302, or 303 operates as a stay from "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." This stay arises automatically when a petition is filed, unless falling within an exception under § 362(b). *In re Jove Engineering, Inc.*, 92 F.3d 1539, 1546 (11th Cir. 1996).

---

[4] There is no need to address questions of whether such an action might not survive due to failure to exhaust state remedies.

[5] A considerable amount of time was spent in both the opinion of the Bankruptcy Court and the briefs before this Court on whether the Bankruptcy Court violated the Younger abstention doctrine and/or the Rooker-Feldman doctrine in enjoining the actions of the Clay County Circuit Court. Because this Court finds that the decision of the Bankruptcy Court is due to be vacated on the merits, this opinion does not address these jurisdictional issues.

Section 362(b)(1) provides that the filing of a bankruptcy petition does not operate as a stay "of the commencement or continuation of a criminal action or proceeding against the debtor." Whether the Bankruptcy Court was correct in concluding that the automatic stay was violated turns on whether the actions taken by the probation officer and district attorney's office in dealing with Mrs. Rainwater's failure to comply with the conditions of her probation constituted the "continuation of a criminal action or proceeding against the debtor."

In concluding that the State's actions were not a continuation of a criminal proceeding, the Bankruptcy Court relied heavily on the Supreme Court's decision in *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552 (1990). Like the present case, *Davenport* involved criminal defendants who were obligated to make monthly restitution payments as a condition of probation. *Davenport*, 495 U.S. at 552. Subsequently, they filed a petition under Chapter 13 of the Bankruptcy Code, listing the restitution obligation as an unsecured debt. After the probation department commenced proceedings on the probation violations in state court, the defendants filed an adversary action in the bankruptcy court seeking a declaratory judgment finding that the restitution obligation was a dischargeable debt and an injunction preventing further attempts by the probation department to collect the restitution payments. While the adversary action was pending, the bankruptcy court confirmed the Chapter 13 plan of the criminal defendants and held that the restitution obligation was dischargeable under Chapter 13. On appeal, the decision of the bankruptcy court was reversed by the District Court, which emphasized the federalism concerns implicated by federal courts intruding on state criminal prosecutions. The Court of Appeals then reversed the ruling of the District Court. Ultimately, the Supreme Court held that the Bankruptcy Code's language and structure required that restitution obligations imposed as conditions of probation in state criminal actions constitute "claims" or "debts" for bankruptcy purposes, and are accordingly dischargeable under Chapter 13. *Davenport*, 495 U.S. at 564.

Contrary to the suggestion in the opinion of the Bankruptcy Court, the *Davenport* decision did not hold that the automatic stay precludes probation officials from enforcing restitution orders while a debtor seeks relief under Chapter 13. While *Davenport's* dicta does indicate that the Court felt that section 362(b)(1) is not inconsistent with granting protection from restitution orders under Chapter 13, its holding focused squarely on whether restitution obligations were in fact "claims" or "debts" within the meaning of the bankruptcy code and therefore were dischargeable. Post *Davenport* developments make this point clear. In November of 1990, Congress responded to the *Davenport* decision by enacting an amendment to the Bankruptcy Code which provides that a debtor in bankruptcy court cannot discharge restitution that is included as part of a criminal sentence. *See* 11 U.S.C. § 1328(a)(3). Furthermore, in *Johnson v. Home State Bank*, 501 U.S. 78 (1991), the Supreme Court recognized that, while leaving intact the general holding in *Davenport* regarding the breadth of the definition of "claim" under the Bankruptcy Code, Congress had overruled the result in *Davenport* by expressly withdrawing the power of bankruptcy courts to discharge restitution orders. *Johnson*, 501 U.S. at 83 n.4.

Even adopting the broadest available definition of "claim" in this case, the actions of the Defendants did not violate the automatic stay provision of 11 U.S.C. § 362. Section 362(b)(1) provides that "[t]he filing of a petition [in bankruptcy] ... does not operate as a stay ... under subsection (a) of this section, of the commencement or continuation of a criminal action or

proceeding against the debtor." This section applies without limitation to any specific subsection of section 362(a). In the words of the Supreme Court, it "removes criminal prosecutions of the debtor from the operation of the Code's automatic stay provision." *Davenport*, 495 U.S. at 553. In the present case, Mrs. Rainwater pled guilty to a felony theft charge and was sentenced to a term of ten years, the execution of which was however stayed by an order for probation and restitution in lieu of incarceration. Sentencing of a criminal defendant, whether by fine, imprisonment, or order to pay restitution, declares the legal consequences of predetermined guilt. *See U.S. v. Henry*, 709 F.2d 298, 310 (5th Cir. 1983). Because a criminal sentence would be meaningless absent authority to ensure that it is complied with, an action by the state to enforce the terms of a sentence is clearly a continuation of a criminal action. As such, the action taken by the State in this instance with respect to Mrs. Rainwater's delinquency hearings and probation revocation was exempted from the automatic stay, whether or not her restitution obligation might constitute a "claim" under 11 U.S.C. 362(a).

The result remains the same, regardless of the motive behind the State's actions concerning the revocation of Mrs. Rainwater's probation. In reaching its conclusion as to whether the State's actions constituted a "continuation of a criminal action or proceeding," the Bankruptcy Court also relied heavily on *Hucke v. State of Oregon*, 992 F.2d 950 (9th Cir. 1993), a decision handed down by the Ninth Circuit in 1993 prior to the effective date of Congress' aforementioned amendment to the Bankruptcy Code. In *Hucke*, the Ninth Circuit held that the mere institution of a probation revocation hearing would constitute a continuation of a criminal action against a debtor and thus be exempt from the automatic stay. 992 F.2d at 953. Nevertheless, the *Hucke* court explained that a probation hearing could run afoul of § 362(a)(6), which stays acts intended to "collect, assess, or recover a claim" against the debtor, if the aim of the hearing was the collection of a fine. *Id.* Following this reasoning, the Bankruptcy Court in this case found that the State violated section 362(a) because it found that the State's actions were motivated by its attempt to collect the restitution at issue. However, section 362(a) makes it clear that any act to collect, assess, or recover a claim against a debtor in bankruptcy is automatically stayed, "*except as provided in subsection (b) of this section.*" 11 U.S.C. § 362(a)(emphasis added). Furthermore, subsection (b) clearly states that the filing of a bankruptcy petition "does not operate as a stay... under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b). The plain language and structure of the section in its entirety indicate that the continuation of a criminal proceeding is not subject to the automatic stay, notwithstanding the fact that the proceedings might involve an attempt to collect, assess, or recover a claim. Therefore, because the precise application of section 362(b) excepts criminal proceedings from all of the various automatic stays contained in section 362(a), the actions of the State regarding the violation of Mrs. Rainwater's probation in the present case did not violate the automatic stay of 362(a)(6).

This interpretation of section 362 is consistent with the legislative history and purpose of the Bankruptcy Act. "The bankruptcy laws are not a haven for criminal offenders but are designed to give relief from financial over extension." *U.S. v. Troxler Hosiery Co.*, 41 B.R. 457, 461 (M.D.N.C. July 27, 1984)(citing H.R.Rep. No. 95-595, 95th Cong. 2d Sess. 343, reprinted in 1978 U.S. Code Cong. & Ad. News, 5787, 6299). The Eleventh Circuit has also recognized that the purpose of bankruptcy is to protect those in financial, not moral, difficulty. *See Barnette v. Evans*, 673 F.2d 1250, 1251 (11th Cir. 1982). In the words of Judge Roney, "[t]here is a public interest in every good faith criminal proceeding ... which overrides any interest the bankruptcy court may have in protecting

the financial interest of debtors." *Barnette*, 673 F.2d at 1251.

## IV. Conclusion

Because the Bankruptcy Court did not have the authority to issue a writ of habeas corpus and because the efforts of the State in ensuring compliance with Mrs. Rainwater's probation did not violate the automatic stay, the decision of the Bankruptcy Court is due to be vacated. The State is therefore entitled to take whatever action it deems necessary to enforce any prior orders of the Clay County Circuit Court.

Dated: January 11, 2000

Judge Sam C. Pointer, Jr.

Service List:

    Bill Pryor
    LaVette Lyas-Brown
    Gregory O. Griffin
    Steve M. Sirmen
    Thomas Semmes